1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11

NOEL SOLETT,

Case No. 1:22-cv-01609-CDB (HC)

12

Petitioner,

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS AND DISMISSING PETITION

13

v.

(Docs. 1, 7)

14

FCI MENDOTA WARDEN,

15

Respondent.

16

17   **I.   Background**

18        Petitioner Noel Solett ("Petitioner") is a federal prisoner proceeding pro se with a petition for

19   writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed December 15, 2022.  (Doc. 1).  Petitioner is

20   currently in the custody of the Bureau of Prisons ("BOP") at the Federal Correctional Institution,

21   Victorville.  *Id*.[1]; (Doc. 9).  Petitioner challenges BOP policy 5410.01, which "excludes prisoners

22   eligible to earn First Step Act earned time credits from applying any earned time credits on the basis of

23   their having 'unresolved pending charges and/or detainers.'"  (Doc. 1 at 2).

24        On July 30, 2024, the Court conducted a preliminary review of the petition and directed

25
26

27        [1] Petitioner filed his petition while he was in custody at the Federal Correctional Institution,
Mendota ("FCI Mendota"), within the Eastern District of California.  *See Francis v. Rison*, 894 F.2d

28   353, 354 (9th Cir. 1990) (jurisdiction remains where the petition has been filed and is not destroyed by
transfer of the petitioner).

Respondent to file a response to the petition.  (Doc. 6).  On September 30, 2024, Respondent filed a motion to dismiss.  (Doc. 7).  On October 21, 2024, the Court ordered respondent to re-serve a copy of the motion to dismiss on Petitioner at the address provided for Petitioner from the U.S. Bureau of Prison's online inmate locator (www.bop.gov) – FCI Victorville Medium I.  (Doc. 8).  Respondent filed a compliant proof of service on October 30, 2024.  (Doc. 11).[2]

Respondent asserts BOP records indicate Petitioner was determined eligible to earn and was awarded FSA earned time credits.  (Doc. 7 at 3).  Respondent argues Petitioner obtained the relief he sought through his § 2241 petition and, thus, there is no case or controversy at issue.  *Id.*  Further, Respondent argues Petitioner has failed to demonstrate administrative exhaustion of remedies.  *Id.* at 3-4.  Petitioner has not filed an opposition to Respondent's motion to dismiss and his time to do so has expired. Thus, because a reply is unnecessary, the Court deems the motion submitted. Local Rule 230(*l*).[3]

## II.  Legal Standard and Analysis

### a.  Motion to Dismiss

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition.  R. Governing 2254 Cases 4.[4]  The Advisory Committee Notes to Habeas Rule 4 provide that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent."  A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Habeas Rule 4.  *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).  A district court must dismiss

---

[2] None of this Court's minute orders served on Petitioner at his updated address have been returned "undeliverable."  Accordingly, notwithstanding that Petitioner failed to file an opposition to Respondent's motion, the Court presumes Petitioner properly was served with and has notice of the motion.

[3] Following the parties' filing of forms expressing consent to the jurisdiction of a U.S. magistrate judge, on October 31, 2024, this action was reassigned to the undersigned for all further proceedings, including trial and entry of judgment, pursuant to 28 U.S.C. 636(c)(1).  (Doc. 13).

[4] The Rules Governing § 2254 cases in the United States Courts ("Habeas Rules") are appropriately applied to proceedings undertaken pursuant to 28 U.S.C. § 2241.  Habeas Rule 1(b).

1    a habeas petition if it "plainly appears" that the petitioner is not entitled to relief.  *Valdez v.*

2    *Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019).

3         **b.  The First Step Act**

4         The First Step Act ("FSA") was enacted on December 21, 2018, and implemented several

5    prison and sentencing reforms, including provisions governing computation of good time credits,

6    reducing and restricting mandatory minimum sentences, safety valve eligibility, retroactive application

7    of the FSA, and the availability of early release.  First Step Act of 2018, Pub. L. No. 115-391, 132

8    Stat. 5194 (2018).

9         With respect to earned time credit, the Ninth Circuit has described the FSA's amendments as

10   follows:

11   [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant
     to the Act's creation of an earned time credit system. [132 Stat.] at 5210-13.  The Act requires
12   that, within 210 days of its enactment, the Attorney General establish a "risk and needs
13   assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award
     earned time credit as an incentive for participation in recidivism reduction programming, and
14   "determine when a prisoner is ready to transfer into prerelease custody or supervised
     release in accordance with section 3624."  § 101(a), 132 Stat. at 5196-97. Section 3624(g)
15   details the criteria for when a prisoner becomes eligible, considering earned time credit, for
16   transfer to prerelease custody or supervised release.  § 102(b), 132 Stat. at 5210-13.

17   *Bottinelli v. Salazar*, 929 F.3d 1196, 1197-98 (9th Cir. 2019).  In accordance with 18 U.S.C. § 3622,

18   the United States Department of Justice published the risk and needs assessment system on July 19,

19   2019.[5]  With respect to the implementation of the risk and needs assessment system, 18 U.S.C. §

20   3621(h) provides:

21        (1) In general - Not later than 180 days after the Attorney General completes and releases the
          risk and needs assessment system (referred to in this subsection as the "System") developed
22        under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that
23        subchapter—

24             (A) implement and complete the initial intake risk and needs assessment for each
               prisoner (including for each prisoner who was a prisoner prior to the effective date of
25             this subsection), regardless of the prisoner's length of imposed term of imprisonment,

26

27        [5] Press Release, *Department of Justice Announces the Release of 3,100 Inmates Under First
          Step Act*, Publishes Risk and Needs Assessment System (July 19, 2019),
28   https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-
     act-publishes-risk-and (last visited December 2, 2024).

and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

(B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

(C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

(2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall—

(A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

(B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1) – (2).  Pursuant to 18 U.S.C. § 3621(h)(1), all inmates in the BOP system were to receive an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") by January 15, 2020.[6]

On January 13, 2022, the Department of Justice announced that the BOP had finalized the FSA time credit rule, and on January 19, 2022, the final rule was published.  FSA Time Credits, 87 Fed. Reg. 2705-01, 2022 WL 159155 (Jan. 19, 2022) (codified at 28 C.F.R. §§ 523, 541).  Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A).  A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2

---

[6] Press Release, *Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last visited December 2, 2024).

consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(ii).

Inmates may begin earning FSA time credits after the inmate's term of imprisonment commences, but an inmate cannot earn credits for programming or activities in which he or she participated prior to December 21, 2018.  28 C.F.R. § 523.42.  Further, an inmate can earn retroactive application of time credits for programming or activities in which he or she participated from December 21, 2018, to January 13, 2022.  *Id.*

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release" (*Bottinelli*, 929 F.3d at 1198) and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection,"  18 U.S.C. § 3624(g)(6)(A).

### c.  Mootness

Under Article III, Section II of the Constitution, a federal court's jurisdiction is limited to adjudication of "live" cases and controversies.  *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).  Federal courts consider various doctrines, including standing, ripeness, and mootness to ascertain whether an action meets the "case and controversy" requirement.  *Poe v. Ulman*, 367 U.S. 497, 502-05 (1961).  To maintain a claim, a litigant must continue to have a personal stake in all stages of the judicial proceeding.  *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) (internal citation omitted).  A case must be dismissed if it becomes moot at any stage.  *Iron Arrow Honor Soc'y. v. Heckler*, 464 U.S. 67, 70-71 (1983) (per curiam).  A case becomes moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Murphy v. Hunt*, 455 U.S. 478, 481 (1984) (internal quotations and citation omitted).

Petitioner alleges the BOP found him ineligible for FSA earned time credits on the grounds that he was the subject of a detainer.  (Doc. 1 at 2).  Prior to November 18, 2022, the BOP deemed inmates with detainers ineligible for FSA credits.  However, on November 18, 2022, the BOP issued

Program Statement 5140.01 wherein the BOP modified its procedures to allow inmates with detainers to earn credits; nevertheless, the inmates still could not have those credits applied until the detainers were resolved. *Otuya v. Warden*, No. 1:22-cv-01615-SKO (HC), 2023 WL 3254438, at 3 (E.D. Cal. May 4, 2023), *F&R adopted*, 2023 WL 6059730 (Sept. 18, 2013).  On February 6, 2023, the BOP issued a change notice to the program statement in which the BOP deleted the requirement that inmates have no detainers in order to have earned time credits applied to their sentence.  *Id.*  Thus, Petitioner is no longer barred from earning credits and having them applied to his sentence due to the detainer.  In fact, BOP records reflect that Petitioner is eligible to earn and apply FSA credits, and the BOP has applied 365 days toward Petitioner's sentence resulting in an advanced release date.  (Doc. 7-1 at 8).  Accordingly, Respondent correctly asserts that the underlying matter has become moot.

### d.  Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies.  *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement.  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional."  *Id.*  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustions and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."  *Id.*

The first step in exhausting administrative remedies is a request for informal resolution.  28 C.F.R. § 542.13.  When informal resolution procedures are inadequate, the BOP makes available to inmates a formal three-level administrative remedy process: (1) a Request for Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel.  28 C.F.R. § 542.10 et. seq.

Respondent asserts Petitioner has never requested relief through the BOP's administrative remedy process concerning the instant claims (Doc. 7 at 3-4) and attaches documents to that effect

(Doc. 7-1 at 9).  Thus, the claims are unexhausted.  The exhaustion requirement "is not lightly to be disregarded."  *Murillo v. Matthews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) (citation omitted).  A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme[.]"  *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation omitted).  Petitioner contends that exhaustion is futile since the BOP's policy bars him from earning FSA credit; he cites to BOP Program Statement 5410.01. (Doc. 1 at 2).  As previously discussed, the BOP has since altered its position such that he is not statutorily barred from earning FSA credits.  Therefore, exhaustion would not be futile, and the exhaustion requirement should not be excused in this case.

**Conclusion**

Based on the foregoing, the Court concludes that the petition is moot and unexhausted. Accordingly, it is HEREBY ORDERED:

1. Respondent's motion to dismiss (Doc. 7) is GRANTED; and

2. Petitioner's petition for writ of habeas corpus (Doc. 1) is DISMISSED WITH PREJUDICE and without leave to amend.

IT IS SO ORDERED.

Dated:   **December 4, 2024**

UNITED STATES MAGISTRATE JUDGE